James A. McDevitt
United States Attorney
Eastern District of Washington
George J.C. Jacobs, III
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 19 2005

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) CR-05-207-WFN |
| JAMES DOUGLAS ROSS, | ) Plea Agreement |
| Defendant. | ) |

Plaintiff United States of America, by and through James A. McDevitt, United States Attorney for the Eastern District of Washington, and George J.C. Jacobs, III, Assistant United States Attorney for the Eastern District of Washington, and Defendant JAMES DOUGLAS ROSS and the Defendant's counsel, Ms. Kathleen Moran, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, JAMES DOUGLAS ROSS, agrees to plead guilty to the Indictment filed on November 16, 2005, charging the Defendant with False Statement or Representation Regarding the Acquisition of a Firearm from a Licensed Dealer, in violation of 18 U.S.C. § 924(a)(1)(A).

The Defendant, JAMES DOUGLAS ROSS, understands that the charge contained in the Superseding Information is a Class D felony. The Defendant, JAMES DOUGLAS ROSS, also understands that the maximum statutory penalty for False Statement or Representation Regarding the Acquisition of a Firearm

Plea Agreement - 1
P51123GJ.GJA.wpd

from a Licensed Dealer, in violation of 18 U.S.C. § 924(a)(1)(A), is not more than five (5) years imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than three (3) years; and a $100 special penalty assessment.

The Defendant, JAMES DOUGLAS ROSS, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release, without credit for time previously served on post-release supervision.

2.    The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3. <u>Waiver of Constitutional Rights</u>:

The Defendant, JAMES DOUGLAS ROSS, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a).    The right to a jury trial;

    (b).    The right to see, hear and question the witnesses;

    (c).    The right to remain silent at trial;

    (d).    The right to testify at trial; and

    (e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4. <u>Elements of the Offense</u>:

The United States and the Defendant agree that in order to convict the Defendant of False Statement or Representation Regarding the Acquisition of a Firearm from a Licensed Dealer, in violation of 18 U.S.C. § 924(a)(1)(A), the United States would have to prove beyond a reasonable doubt the following elements:

> First, the Defendant, JAMES DOUGLAS ROSS, knowingly made a false statement; and
>
> Second, the false statement was material to the Defendant's acquisition of a firearm from the seller, Pawn 1; and
>
> Third, the statement pertained to information that the law requires Pawn 1, a federal firearms licensee, to keep.

5. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts constitute an adequate factual basis for JAMES DOUGLAS ROSS's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Sometime following ROSS' discharge from the Army, but prior to December 5, 2004, he relocated to an apartment complex at 217 S. Sullivan Road, Spokane Valley, Washington. In February 2005, a Confidential Source and spouse (CW-1 and CW-2) contacted the Inland Northwest Joint Terrorism Task Force (INJTTF) and provided information regarding ROSS to Special Agent (SA) Darrin Gilbert. CW-1 and CW-2 informed SA Gilbert that they initially contacted ROSS via the Internet on the Web site **www.stormfront.org**. This website is well known as an internet "chatroom" where white supremacist rhetoric is exchanged.

On April 3, 2005, CW-1 and another Confidential Source (CW-3) met with ROSS, Ryan Will, and Rebecca Ferris at their former residence (217 S. Sullivan Road, Apartment 4, Spokane Valley, Washington). The group, including CW-1 and CW-3, discussed a number of things, including matters involving several handguns owned by ROSS. CW-3 was present and witnessed the conversation.

On April 10, 2005, CW-1 reiterated his prohibited status as a convicted felon to ROSS. CW-1 commented to ROSS that CW-1 was unable to purchase a weapon like the HK G-3 because CW-1 is a convicted felon.

On May 17, 2005, in a consensually recorded conversation, CW-1 asked ROSS about how to get his gun rights back. ROSS stated lawyers could be retained to file the necessary paperwork, but noted that the process could be expensive. CW-1 then asked ROSS if he would be willing to sell the .38 revolver

Plea Agreement - 4
P51123GJ.GJA.wpd

ROSS had previously given to CW-1. ROSS responded that he would not sell the revolver because of where it came from. CW-1 then asked ROSS if CW-2 could get in trouble if CW-2 purchased a gun on CW-1's behalf. ROSS opined that CW-2 would be breaking the law and added that ROSS himself could get in trouble if the police were to arrive as Ross had firearms in the apartment while knowing that CW-1 was a convicted felon. ROSS then stated that he was not worried about it because he had a number of individuals with felonies in his apartment on previous occasions. CW-1 then asked if ROSS would be willing to buy CW-1 a handgun, knowing that CW-1 was a felon. ROSS responded that he would and that if anyone asked, ROSS planned to say that he was buying the gun for CW-2, who could lawfully possess it.

On June 21, 2005, CW-1 met ROSS at ROSS' new residence of 726 N. McDonald Road, Apt. #113, Spokane Valley, Washington. CW-1 informed ROSS that a firearm was for sale at a nearby pawn shop. CW-1 asked if ROSS would make good on his previous offer to buy a firearm on the behalf of CW-1. ROSS agreed and the two traveled to Pawn 1 located at 11812 E. Sprague Ave, Spokane Valley, Washington. CW-1 was observed by members of the INJTTF in the parking lot, giving ROSS the money to purchase the firearm. Acting in an undercover capacity as a Pawn 1 employee, Bureau of Alcohol, Tobacco and Firearms (ATF) SA Darrell Boné observed ROSS and CW-1 enter Pawn 1. SA Boné observed ROSS complete an ATF Form 4473, Firearms Transaction Record Part 1 - Over-the-Counter. On that form question 12 (a) asks: "Are you the actual buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer of the firearm(s) if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you." SA Boné observed ROSS appear to read the question and then provide a written answer of "Yes." When finished completing the form, ROSS signed and dated the form as being true and correct. He then gave SA Boné (who was acting in an

Plea Agreement - 5
P51123GJ.GJA.wpd

undercover capacity as a Pawn 1 employee) $250.00 for the purchase of a Smith and Wesson, model SW40F, .40 caliber pistol, serial number PACO692. The Pawn 1 employee (Agent Boné) then told ROSS that he would have to wait the mandatory five business days and then could return to the store to pick up the firearm. ROSS and CW-1 then returned to ROSS' residence.

  On July 1, 2005, the records and video recordings of Pawn 1 indicate that on that day, ROSS entered Pawn 1 and picked up the firearm. Later that day, ROSS delivered the .40 caliber handgun to CW-1 at the residence of CW-1. The transaction was witnessed by CW-2 and CW-3.

  On July 12, 2005, in a consensually recorded telephone call, CW-1 advised ROSS that the Smith & Wesson handgun purchased by ROSS for CW-1 had a broken firing pin. Ross instructed CW-1 to purchase a firing pin at Brock's Gunsmithing, in Spokane, Washington. ROSS then offered to install the firing pin.

  On August 2, 2005, CW-1 turned the Smith & Wesson pistol over to Federal Bureau of Investigation SA Jason Oakley, who in turn, gave the pistol to SA Boné. SA Boné determined that it was the same firearm ROSS purchased from Pawn 1 on June 21, 2005.

  On October 31, 2005, a criminal complaint and arrest warrant were obtained by SA Boné. On November 1, 2005, search warrants for ROSS' cars and apartment were obtained by SA Gilbert. On November 3, 2005, SA Gilbert and ATF SA Mike Northcutt arrested ROSS without incident. Subsequent to his arrest, ROSS was advised of his Miranda rights, signed a waiver and agreed to answer questions. During his interview, ROSS admitted to filling out the ATF Form 4473 while knowing that he was not the actual purchaser of the firearm. Ross told Agents Gilbert and Northcutt that he was purchasing the firearm for CW-1, who he knew to be a prohibited person, because CW-1 needed it for protection because he lived in a "bad neighborhood."

Plea Agreement - 6
P51123GJ.GJA.wpd

An individual who purchases a firearm from a federally licensed dealer must fill out ATF Form 4473, which is the official firearms transaction record for intrastate, over-the-counter sales the dealer must maintain. ATF promulgated a regulation, codified at 27 C.F.R. § 178.124, that governs the preparation and maintenance of Form 4473. Pawn 1 is a federal firearms licensee and the law requires Pawn 1 to keep the ATF Form 4473 completed by the purchaser in Pawn 1's records.

6. **The United States Agrees Not to File Additional Charges:**

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

7. **United States Sentencing Guideline Calculations:**

(a.) **Base Offense Level:**

The United States and the Defendant agree that the Defendant's base offense level for False Statement or Representation Regarding the Acquisition of a Firearm from a Licensed Dealer is 12. USSG § 2K2.1(a)(7).

(b.) **Specific Offense Characteristics:**

The United States contends that the Defendant's base offense level should be increased two (2)-levels because, including relevant conduct, the offense involved between 3-7 firearms. USSG § 2K2.1(b)(1)(A). The Defendant reserves the right to argue against such an increase.

(c.) **Acceptance of Responsibility:**

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than December 19, 2005; the United States will recommend

Plea Agreement - 7
P51123GJ.GJA.wpd

that the Defendant receive a two (2)-level downward adjustment, pursuant to USSG §§ 3E1.1(a).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a two (2)-level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

(d.)    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

8.    Incarceration:

The United States will recommend that the Court impose a sentence within the applicable guideline range ultimately determined by the Court.

9.    Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

10.    Supervised Release:

The United States will recommend that the Court impose a three (3)-year term of supervised release. The United States will recommend that any term of supervised release include the following special conditions, in addition to the standard conditions of supervised release:

(A) that the Defendant participate in and complete such drug/alcohol testing and drug/alcohol treatment programs as the Probation Officer directs; and

Plea Agreement - 8
P51123GJ.GJA.wpd

(B) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

11. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the aggregate $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

12. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

13. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

14. <u>Appeal Rights</u>:

The Defendant agrees to waive the right to appeal the sentence if the Court imposes a prison term of no longer than sixteen (16) months and imposes a term of supervised release of no longer than three (3) years.

15. <u>Abandonment of Property</u>:

The Defendant agrees to voluntarily relinquish and abandon all right, title and interest in the property and personal items, including firearms and ammunition, seized from his residence pursuant to the federal search warrant executed at his residence on November 3, 2005, in favor of the United States, and

Plea Agreement - 9
P51123GJ.GJA.wpd

1 | hereby agrees to execute any and all forms and pleadings necessary to effectuate
2 | such abandonment of such property and personal items.
3 |     16.   <u>Integration Clause</u>:
4 |     The United States and the Defendant acknowledge that this document
5 | constitutes the entire Plea Agreement between the United States and the
6 | Defendant, and no other promises, agreements, or conditions exist between the
7 | United States and the Defendant concerning the resolution of the case.  This Plea
8 | Agreement is binding only upon the United States Attorney's Office for the
9 | Eastern District of Washington, and cannot bind other federal, state or local
10 | authorities.  The United States and the Defendant agree that this agreement cannot
11 | be modified except in a writing that is signed by the United States and the
12 | Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

James A. McDevitt
United States Attorney



George J.C. Jacobs, III
Assistant U.S. Attorney

12/19/05
Date

23 | I have read this Plea Agreement and have carefully reviewed and discussed
24 | every part of the agreement with my attorney.  I understand and voluntarily enter
25 | into this Plea Agreement.  Furthermore, I have consulted with my attorney about
26 | my rights, I understand those rights, and I am satisfied with the representation of
27 | my attorney in this case.  No other promises or inducements have been made to
28 | me, other than those contained in this Plea Agreement, and no one has threatened

Plea Agreement - 10
P51123GJ.GJA.wpd

or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____   19 Dec 05
James Douglas Ross                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's pleas of guilty.

_____   12/19/05
Kathleen Moran                    Date
Attorney for the Defendant

Plea Agreement - 11
P51123GJ.GJA.wpd